UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

MYRT HALES                                    CIV. ACTION NO. 3:25-01784

VERSUS                                        JUDGE TERRY A. DOUGHTY

KERR-MCGEE OIL & GAS                          MAG. JUDGE KAYLA D. MCCLUSKY
ONSHORE L P, ET AL.

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, motion for more definite statement [doc. # 39] filed by Defendant, NGS Sub Corp. ("NGS").   The motion is opposed.   For reasons explained below, IT IS RECOMMENDED that the motion to dismiss be GRANTED IN PART and DENIED IN PART.   IT IS FURTHER ORDERED that the motion for more definite statement is DENIED.

### Background

On October 2, 2025, Plaintiff Myrt Hales ("Hales")[1]  filed the instant oilfield

---

[1]  Hales appears herein and seeks recovery in one or more of the following capacities:

   (1) Lessor, assignee, or third-party beneficiary of certain mineral and/or surface leases between Plaintiff and Defendants;
   (2) successor in interest to certain mineral and/or surface leases between Plaintiff and Defendants;
   (3) owner of property contaminated by the oil and gas activities conducted or controlled by one or more of the Defendants;
   (4) successor in interest to, or the assignee of, the owners of Property contaminated by the oil and gas activities conducted or controlled by one or more of the Defendants;
   (5) servitude owner who has the right to sue for remediation damages under the Mineral Code; and
   (6) parties who possess the right of action to file this lawsuit under Louisiana law.

(Petition, ¶ 3).

contamination a/k/a "legacy" lawsuit[2] in the Fifth Judicial District Court for the Parish of Richland, State of Louisiana, against ten Defendants,[3] arising out of decades-long oil and gas exploration and production activities conducted on Hales' property by the Defendants and/or their predecessors. (Petition).[4] Specifically, Hales alleged that he owns and/or uses certain property in Richland Parish that Defendants or their predecessors-in-interest contaminated or otherwise damaged via their oil and gas exploration and production activities, which included the construction, and subsequent abandonment of wells, sumps, flowlines, pipelines, tank batteries, wellheads, unlined earthen pits, measuring facilities, barges, production platforms, separators, and injection facilities. (Petition, ¶¶ 5-6). Hales asserted a comprehensive array of theories of recovery against Defendants and seeks to recover compensatory, punitive, and/or exemplary damages associated with restoring the lands to their original, unpolluted state, the diminution of property value, and resulting stigma. (Petition, Prayer). He also requested injunctive and equitable relief, plus an award of attorney's fees. *Id*.

On November 14, 2025, Defendants, Anadarko US Offshore, LLC ("Anadarko") and

---

[2] "These types of actions are known as 'legacy litigation' because they often arise from operations conducted many decades ago, leaving an unwanted 'legacy' in the form of actual or alleged contamination." *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 239 n.1 (La. 2010) (citation omitted).

[3] They include: Kerr-McGee Oil & Gas Onshore LP; Anadarko US Offshore, L.L.C.; Occidental Petroleum Corporation; Hess Corporation; Williams Well Service, Inc.; NGS; Ashley Investment Company; Murphy Oil Corporation; Murphy Exploration & Production Company; and Murphy Exploration & Production Company – USA. (Petition, ¶ 4).

[4] Several documents are attached to the Petition, including an aerial photo map of the property showing well locations; an "Operator History" that lists the operators of the wells at issue and dates of operations; photographs of certain wells and equipment on the Property; a "Lease Abstract" that lists known mineral leases and other agreements that affect the property; and a letter sent to the Commissioner of Conservation. *See* Petition, ¶ 7 (explaining and incorporating the attached Exhibits A-E).

Kerr-McGee Oil & Gas Onshore LP ("KMOGO"), removed the suit to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332.  (Joint Notice of Removal [doc. # 1]). Anadarko and KMOGO established that Hales' citizenship is completely diverse from all properly joined Defendants[5]  and that the amount in controversy exceeded $75,000 at the time of removal.  *See* Notice of Removal.

On January 15, 2026, Defendant, Hess Corporation, filed a Rule 12(b)(6) motion, which it combined with a Rule 12(e) motion for more definite statement.  [doc. # 33].  On that same day, Defendants, Anadarko and KMOGO, also filed a Rule 12(b)(6) motion.  [doc. # 36].

On January 15, 2026, Defendant, NGS, also filed the instant Rule 12(b)(6) motion together with an alternative Rule 12(e) motion for more definite statement.  [doc. # 39].  NGS asserted that Hales' Petition failed to include any factual allegations against it, and, therefore, NGS should be dismissed from the case entirely.  Alternatively, NGS argued that nine specific claims or theories of recovery should be dismissed:

> 1) liability under Louisiana Civil Code article 2688; (2) punitive and/or exemplary damages under former Civil Code article 2315.3; (3) strict liability under pre- and post-1996 versions of Civil Code article 667; (4) liability under pre- and post-1996 versions of Civil Code articles 2317 and 2322; (5) breach of contract; (6) civil fruits; (7) loss of enjoyment and use of property, land loss and subsidence; (8) unjust enrichment; and (9) fraud.

(M/Dismiss, Memo., pg. 7).

On February 9, 2026, the Court signed a Stipulation and Consent Judgment that resolved

---

[5]  By all accounts, Defendant, Williams Well Service, Inc. ("WWS"), shared common citizenship with Hales.  (Notice of Removal).  However, Anadarko and KMOGO submitted evidence to show that Hales had no reasonable possibility of recovery against WWS, and, thus, its citizenship should be disregarded for the purpose of diversity jurisdiction.  *Id*., Exh. 4.  Hales effectively conceded as much because, on December 23, 2025, the Court granted his motion to voluntarily dismiss WWS from the suit.  [doc. #s 28 & 30].

3

the motions to dismiss and/or for more definite statement [doc. #s 33 & 36] filed by Defendants, Hess Corporation, Andarko, and KMOGO. [doc. # 47].

On February 13, 2026, Hales filed his opposition to NGS's combined Rule 12(b)(6) and Rule 12(e) motion. (Pl. Opp. [doc. # 51]). On February 20, 2026, NGS filed its reply brief. (NGS Reply [doc. # 54]).

On March 10, 2026, the Court entered a Consent Judgment between Hales and NGS that resolved many of the issues raised by NGS's pending motion(s). (Joint M/Entry of Consent Judgment [doc. # 60] and Consent Judgment [doc. # 62].

The matter is ripe.

## Analysis[6]

In their joint motion for entry of consent motion, the parties agreed that, upon entry of the Consent Judgment, only three issues would remain for the Court to decide:

- Liability under Louisiana Civil Code article 2688;

- Liability under pre-and post-1996 versions of Civil Code articles 2317 & 2322;

---

[6] As the parties are aware, this Court is acquainted with the issues raised by the instant motion. In *Richland Seed Co., Inc. v. BLSW Pleasure Corp.*, the undersigned issued a report and recommendation that addressed some of the same arguments that appear in this case. *See Richland Seed Co., Inc. v. BLSW Pleasure Corp.*, Civ. Action No. 21-1070 (W.D. La.) [doc. # 75]. Judge Doughty adopted the report and recommendation without objection. *Id*. [doc.# 76]. Accordingly, where appropriate, the undersigned will borrow freely from this Court's prior decision on the same subject matter. In addition, other federal courts in this state have weighed in on these same issues. *See, e.g., Alford v. Chevron U.S.A. Inc.*, 13 F.Supp.3d 581, 588 (E.D. La. 2014), *order amended on reconsideration* (June 4, 2014); *Prairie Land Co. v. ConocoPhillips Co.*, Civ. Action No. 20-0748, 2020 WL 5647300 (W.D. La. Sept. 22, 2020); *Levet v. Exxon Mobil Corp.*, Civ. Action No. 15-2069, 2015 WL 9685555 (W.D. La. Nov. 19, 2015), *R&R adopted,* 2016 WL 112678 (W.D. La. Jan. 8, 2016); *Ritchie Grocer Co. v. 2H, Inc.*, Civ. Action No. 14-2868, 2015 WL 9589890 (W.D. La. Sept. 16, 2015), *R&R adopted,* 2015 WL 9587538 (W.D. La. Dec. 30, 2015); *Tureau v. 2H, Inc.*, Civ. Action No. 13-2969, 2015 WL 4694072 (W.D. La. Aug. 6, 2015); *Guilbeau v. Hess Corp.*, Civ. Action No. 14-2867, 2015 WL 2353508 (W.D. La. Apr. 2, 2015).

- Breach of contract (except to the extent this claim is affected by Hales' stipulation that he is not alleging breach of contract pursuant to an express lease provision).

(Joint M/Entry of Consent Judgment [doc. # 60] and Consent Judgment [doc. # 62]).   As it turns out, however, the parties also intended to preserve for determination NGS's sufficiency of the pleadings argument and its motion for more definite statement.[7]   The Court will address the remaining issues raised by the Rule 12(b)(6) motion and then discuss the alternative Rule 12(e) motion.

## I.      Rule 12(b)(6)

### a)      Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."   FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 667-668 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.   *Iqbal,* 556 U.S. at 556.   Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.   *See Twombly*, 550 U.S. at 556.   Assessing whether a complaint states a plausible claim for relief is a "context-specific

---

[7] Counsel for Hales and NGS clarified this point in response to an email inquiry from chambers.

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well pleaded. *See Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (citations omitted); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (citations omitted). Relatedly, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation marks omitted).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Id*.; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the

6

plaintiff's complaint and are central to his claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

      b)      <u>NGS as a Defendant</u>

NGS contends that the Petition does not include any specific factual allegations against it, and, therefore, fails to state a claim for relief. NGS emphasizes that it is mentioned only three times in the suit: first, to name it as a Defendant; second, to request service of process; and third, to identify NGS, amongst other persons or entities, in the attached Lease Abstract as a party to a lease assignment. (M/Dismiss, Memo., pg. 4). NGS concludes that, "[t]he Petition fails to allege [its] relationship to the Property, fails to allege any connection between NGS and the alleged injury, and fails to allege any connection between NGS and the Plaintiff . . ." *Id*., pg. 6.

NGS, however, underestimates the significance of the Lease Abstract, which suggests that, on June 12, 2006, NGS assigned its interest in the subject property to Denbury Onshore, L.L.C.. (Lease Abstract, Petition, Exh. D). In order for NGS to transfer its interest, it stands to reason that it held a lease interest on the date of the assignment. While the Petition and the Lease Abstract do not reveal when NGS acquired its interest, it necessarily was some time prior to June 12, 2006. Furthermore, Hales alleged, in general terms, his relationship to the Property, *see* Petition, ¶ 3, which, in turn, is connected to NGS via NGS's lease interest that was in effect for an undetermined period.

NGS also stresses that it is absent from the alleged Operator History attached to the Petition. *See* Petition, Exh. B. However, NGS describes no consequences stemming from this omission, and/or why its liability cannot be predicated on its status as a leaseholder. (M/Dismiss, Memo., pg. 6). While not dispositive, Hales' allegations against NGS appear to be

coextensive with his allegations against at least one or more Defendants, e.g., Ashley Investment Company, which has already filed a responsive pleading.   *See* Answer [doc. # 68].

NGS further contends that, apart from "group pleading[s]" asserted against all Defendants, Hales does not trace any of his alleged damages to NGS.   To support its argument, NGS cited *Matter of Settoon Towing, L.L.C.*, where the Fifth Circuit affirmed the dismissal of eighteen defendants because the plaintiff oyster farmers failed to specify which or how any of the defendants' oil and gas operations caused an increase in brine or produced water that resulted in an oyster mortality event.   *Matter of Settoon Towing, L.L.C.*, 23-30578, 2024 WL 3520166, at *2 (5th Cir. July 24, 2024) (unpubl.).   In its decision, the Fifth Circuit remarked that, "[p]laintiffs' complaint is more akin to a 'group pleading' complaint, which this Court has rejected."   *Id*. (citing *Armstrong v. Ashley*, 60 F.4th 262, 274 (5th Cir. 2023)).

However, *Matter of Settoon Towing, L.L.C.*, is unpublished, and, thus, non-precedential. *Maxwell v. Thomas*, 133 F.4th 453, 454 n.1 (5th Cir.2025), *cert. granted in part,* 25-5930, 2026 WL 1513325 (U.S. June 1, 2026) (citing 5TH CIR. R. 47.5.4).   Further, *Matter of Settoon* cited *Armstrong v. Ashley*, which was a civil rights § 1983 case where each defendant's conduct must be separately analyzed.   *See Armstrong*, 60 F.4th at 274.   Also, in 2024, Judge Cain considered *Matter of Settoon Towing, L.L.C.,* in the context of a legacy lawsuit pending before him.   *See Thomas Resources, LLC v. Crimson Expl. Operating Inc.*, Civ. Action No. 24-0952, 2024 WL 4467523, at *3 (W.D. La. Oct. 10, 2024).   In *Thomas Resources*, as here, the plaintiffs made general allegations against ten defendants but did not specify which of their allegations applied to each defendant.   *Id*.   However, like Hales, the plaintiffs in *Thomas Resources*, attached various documents to their petition, including aerial imagery of the property, photographs, an

8

operator history, and a lease history.   *Id*.   Based on these attachments, and the multitude of

claims and causes of contamination on plaintiffs' property, Judge Cain held that the case was

distinguishable from *Matter of Setton Towing, L.L.C.*   *Id*.   The same result follows here.

      c)    <u>Specific Claims</u>

      *i)*    *Civil Code article 2688*

Louisiana Civil Code article 2688[8] was enacted in 2004, with an effective date of

January 1, 2005.   LA. CIV. CODE ART. 2688.   It provides that "[t]he lessee is bound to notify

the lessor without delay when the thing has been damaged or requires repair, or when his

possession has been disturbed by a third person.   The lessor is entitled to damages sustained as

a result of the lessee's failure to perform this obligation."   *Id*.

Hales alleged that Defendants breached their obligation to notify him of the

contamination on his property after article 2688 became effective in 2005 and that he sustained

resulting damages.   (Petition, ¶ 50).   He further alleged that Defendants' failure to provide

notice "constitutes an active and substantial breach of the applicable mineral and surface leases"

and "constitutes a tortious breach of the applicable leases."   *Id*.

NGS argues that Hales cannot state a claim against it under article 2688 because the law

did not become effective until 2005 – decades after the leases described in Exhibit D to the

Petition were executed, i.e. in 1944 and 1945.   (M/Dismiss, Memo., pg. 7).   In support of its

---

[8] A federal court sitting in diversity applies the substantive law of the forum state.   *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citation omitted).   Hales specifically invoked Louisiana law in his Petition.   Furthermore, NGS did not contest applicability of Louisiana law.   Therefore, the parties implicitly agree that the disputed state law issues are governed by the substantive law of Louisiana.   *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

argument, NGS cited a 1983 Louisiana Supreme Court decision, which recognized that, "[w]here the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute." *Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983).

In response, Hales acknowledged that NGS was not a party to the leases that were executed in the 1940s, but that NGS clearly was a leaseholder after 2004 because it assigned its rights to Denbury Offshore, L.L.C. in 2006. (Pl. Opp. Brief, pg. 4). Hales then cited two cases which, together, essentially recognize that a builder has a duty of disclosure to his customer whenever he acquires knowledge of a hazard that arises from ordinary usage of the structure. *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376 (La. 1990); *Kemper v. Don Coleman, Jr., Builder, Inc.*, 752 So.2d 861 (La. App. 2d Cir. 1999). Breach of the foregoing duty potentially gives rise to a claim for fraud or negligence. *Id*.

In its reply, NGS asserted that article 2688 cannot apply retroactively to impose a duty on a lessee pursuant to a lease that was executed prior to 2005, even if the lessee acquired its interest after the effective date of article 2688. (NGS Reply Brief, pg. 2). NGS also clarified that it was seeking dismissal of Hales' claims under article 2688, not his claims under Louisiana tort law. *Id*.

The Court observes that Hales' claim under article 2688 against NGS presupposes that NGS executed a lease after 2004. Hales, however, does not allege any facts to indicate that NGS executed a lease with him or his predecessor(s)-in-interest after 2004. The assignment in 2006 does not clarify this issue. Moreover, even if post-2004, NGS acquired its interest in a lease that predates 2005, Hales has cited no authority finding that article 2688 is applicable in these circumstances. Rather, case law supports the contrary conclusion. *See Alford*, 13 F.

10

Supp. 3d at 598 (holding that "article 2688 is not applicable to this case because it was enacted in 2005, many years after the lease in question was executed"); *Ritchie Grocer Co.*, 2015 WL 9589890, at \*4 (same); *Tureau*, 2015 WL 4694072, at \*7 (same).   Accordingly, Hales' claim against NGS under article 2688 is inapplicable and subject to dismissal.

> *ii)   Civil Code articles 2317 and 2322*

Hales contends that NGS is strictly liable under Louisiana Civil Code articles 2317 and 2322.   (Petition ¶ 21).   Article 2317 imposes liability on an owner for damage caused by things in his custody, whereas article 2322 imposes liability on the owner of a building for damage caused by the building's ruin.   Pre-1996, "[a]rticles 2317 and 2322 imposed strict liability based on status as owner/custodian, rather than personal fault."   *Morgan Plantation, Inc.*, 2017 WL 4864489, at \*6 (citation omitted).   Before the 1996 amendments,

> the sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was that in the former the plaintiff had the additional burden of proving the defendant's scienter, i.e., that the defendant "knew or should have known" of the defect.

*Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689, n.9 (La. 2001); *see also Dupree v. City of New Orleans*, 765 So.2d 1002, 1007, n.5 (La. 2000).

The 1996 Tort Reform, however, eliminated strict liability under Louisiana Civil Code articles 2317 and 2322 and replaced it with a negligence standard.   *See Richard v. Dollar Tree Stores Inc.*, Civ. Action No. 23-0913, 2024 WL 2923003, at \*4 (W.D. La. June 10, 2024), *aff'd,* 2025 WL 354980 (5th Cir. Jan. 31, 2025) (citing Acts 1996, 1st Ex. Sess., No. 1, § 1, eff. April 16, 1996); *Broussard v. Voorhies*, 970 So.2d 1038, 1042 (La. App. 1st Cir. 2007) (Civil Code article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of article 2317).

Post-April 16, 1996, Louisiana Civil Code articles 2317.1 and 2322 provide that a person

who owns or controls a building is liable for harm caused by its defect when the plaintiff can prove:

> (1) ownership [or control] of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation.

*Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F.Supp.3d 767, 771 (E.D. La. 2017) (citing *Broussard v. State ex rel. Office of State Bldgs.,* 113 So.3d 175, 182–83 (La. 2013) and LA. CIV. CODE ARTS. 2317.1, 2322)).   "A custodian's duty is the same as that under the general negligence theory of article 2315."   *Id*. (citation omitted).   In other words, after the 1996 Tort Reform, Civil Code articles 2317 and 2322 no longer are meaningfully distinct from article 2315.

NGS contends that Hales fails to state a claim under pre- *and* post-1996 Civil Code Articles 2317 and 2322.   Specifically, NGS challenges the viability of Hales' strict liability claim because he does not allege that NGS (1) held an interest in the property prior to 1996 and (2) conducted activities on or adjacent to the Property or had garde of the facilities or any defect or ruin.   (M/Dismiss, Memo., pg. 9).

The Court agrees with NGS that Hales does not allege facts to show that NGS acquired its interest in the Property prior to April 16, 1996.   Absent an interest acquired by NGS in the Property prior to the 1996 Tort Reform, Hales has not shown that he has a viable claim for strict liability against NGS under former articles 2317 and 2322.   Therefore, Hales' strict liability claims under the pre-April 16, 1996 versions of articles 2317 and 2322 are subject to dismissal.

However, the Court finds it unnecessary and inefficient to parse the sufficiency of Hales' post-1996 claims under articles 2317 and 2322 because the elements of those claims overlap with his general negligence claim, which NGS did not challenge and will remain pending.

### iii)      Breach of Contract

NGS next argues that Hales cannot state a claim for breach of contract because he failed to identify an express lease provision that NGS breached.   In response, Hales conceded that he has not stated a claim for relief against NGS for breach of an *express* restoration provision.   (Pl. Opp. Memo., pgs. 8-12).   Instead, he asserted that if a mineral lease is silent as to a lessee's restoration obligation, then the Civil Code lease articles may fill that gap.   *Id*.   He then proceeded to discuss various codal sources that impose restoration obligations upon the lessee. *Id*.

In its reply, NGS stated that, in light of Hales' admission that he has not stated a claim against NGS for breach of any express contractual provision, the Court should grant its motion. (NGS Reply Memo., pg. 5).   NGS asserted that, insofar as Hales seeks to enforce codal obligations, they are distinct from his breach of contract claim.   *Id*.   Consequently, the existence of potential implied statutory obligations has no bearing on NGS's argument that Hales has failed to state a claim for breach of an express contractual provision.   *Id*.

Upon consideration, the Court agrees with the parties and finds that Hales has not stated a claim for breach of contract stemming from NGS's alleged failure to abide by any express lease provision.   This finding is consistent with the parties' Consent Judgment where Hales stipulated that he was not alleging claims against NGS under an express lease provision.   *See* Consent Judgment [doc. # 62].   Since NGS's motion did not seek dismissal of any codal basis for Hales' breach of contract claim, the Court need not reach that issue.

## II.      Rule 12(e)

NGS alternatively contends that, if the Court finds that Hales has stated a claim for relief

13

against NGS then, for the same reasons asserted in support of its motion to dismiss, Hales should be required to amend his petition to cure its improper vagueness pursuant to Federal Rules of Civil Procedure 12(e) and 9(b).

Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake."   FED. R. CIV. P. 9(b).   However, Hales agreed to dismiss his claims for fraud against NGS.   See Consent Judgment [doc. # 62].   Thus, any argument under Rule 9(b) is inapplicable.

Rule 12(e) provides, in relevant part, that

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.   The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired . . .

FED. R. CIV. P. 12(e).

Rule 12(e) is not intended to be used as a vehicle for discovery or to frustrate Rule 8(a)(2)'s minimal pleading requirements by compelling the plaintiff to amend his complaint when it otherwise suffices to withstand a motion to dismiss.   *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).   Furthermore, "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small -- the pleading . . . must be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."   *Texaco, Inc. v. Louisiana Land & Expl. Co.*, 113 B.R. 924, 940-41 (M.D. La. 1990) (citation omitted).

NGS complains that Hales is guilty of group-pleading, and, thus, it is unable to determine which allegations pertain to NGS, rather than other Defendants.   However, the Court already has

14

considered and rejected NGS's group pleading argument in the context of NGS's Rule 12(b)(6) motion.   *See* discussion, *supra*.

NGS also decries Hales' failure to explain precisely how or when he acquired his interest in the Property or when the alleged damage occurred.   NGS seeks this additional information to support additional defenses.   However, where, as here, the Court has determined that the plaintiff's complaint suffices to withstand a motion to dismiss, the motion for more definite statement should not be used as a discovery device to obtain facts to prepare for trial.   *Mitchell,* 269 F.2d at 132.   Indeed, the Petition was not so vague as to prevent NGS from filing an extensive, claim-specific Rule 12(b)(6) motion.   *See* discussion, *supra*.   In addition, at least four of NGS's co-Defendants have filed responsive pleadings premised upon the same allegations that NGS contends are indecipherably vague.   *See* Answers [doc. #s 56-58, & 68].

In short, the Court discerns no meritorious reason why NGS cannot admit or deny the allegations in the Petition.   As the Fifth Circuit remarked in *Mitchell,* "we find no statement or testimony . . . to indicate why the defendants, from their knowledge of their own records . . . as well as their operations, would be unable to either admit or deny the allegations concerning . . . violations."   *Mitchell,* 269 F.2d at 132.   The same reasoning applies here.

## III.    Amendment

In his brief, Hales claimed entitlement to at least one opportunity to amend its complaint before any of his claims were dismissed with prejudice.   (Hales Opp. Memo., pg. 12). Certainly, a court is required to freely grant leave to amend when justice so requires it.   FED. R. CIV. P. 15(a)(2).   However, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint.   *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th

Cir. 2021), *as revised* (Nov. 26, 2021).

Here, Hales' conditional request for leave to file a theoretical amended complaint to set forth unspecified facts does not comply with Rule 15 and is DENIED.

That being said, and although the recommended dismissal herein is nominally "with prejudice," *see* discussion, *infra*, that moniker is misleading in the present context where the motion disposes of fewer than all claims and parties because it does not constitute a final judgment. *See* FED. R. CIV. P. 54(b). The recommended dismissal remains subject to revision at any time before conclusion of the case. If Hales uncovers facts in discovery to support one or more of the dismissed claims, he may seek reconsideration of the judgment of dismissal, together with a proposed pleading that supports that claim(s).

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Defendant, NGS Sub Corp.'s Rule 12(b)(6) motion [doc. # 39] be GRANTED IN PART AND DENIED IN PART. IT IS RECOMMENDED that the motion be GRANTED as to Plaintiff Myrt Hales' claims under Civil Code article 2688, for strict liability under pre-1996 Civil Code articles 2317 and 2322, and for breach of contract premised upon express lease provisions and that these claims be DISMISSED WITH PREJUDICE. IT IS RECOMMENDED that the motion to dismiss otherwise be DENIED.

IT IS ORDERED that Defendant, NGS Sub Corp.'s Rule 12(e) motion for more definite statement [doc. # 39] is DENIED.[9]

---

[9] As this motion is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal/objection must be made to the district judge in accordance with Rule 72(a).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 30th day of June, 2026.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

17